SO ORDERED.

SIGNED this 5 day of May, 2022.



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

**AMJED FARAJ HATU**                    **Case No. 19-05428-5-JNC**
                                                          **Chapter 7**

       **Debtors**
 _____

**JAMES B. ANGELL, Chapter 7 Trustee for**
       **Amjed Faraj Hatu,**

**and**

**AMJED FARAJ HATU,**
       **Plaintiffs,**

**v.**                                                            **Adv. Pro. No. 21-00023-5-JNC**

**SOUTHCO DISTRIBUTING COMPANY,**
       **Defendant**


### MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR
### JUDGMENT ON THE PLEADINGS

Before the court is the motion of plaintiff chapter 7 trustee James B. Angell (the "Trustee") for judgment on the pleadings (AP Dkt. 43; the "Motion")[1] filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, made applicable to this action under Rule 7012 of the Federal Rules of Bankruptcy Procedure. The Motion is supported by Trustee's memorandum of law, supplement, and reply (AP Dkts. 44, 45 and 49 respectively). Defendant Southco Distributing Company ("Southco") filed a brief in opposition (AP Dkt. 48). In the Motion, the Trustee seeks judgment against Southco with respect to the following causes of action contained in his first amended complaint (AP Dkt. 23, the "Amended Complaint"): the fourth cause of action for avoidance of lien; the fifth cause of action for objection to validity of lien against the properties held by the debtor and the Amjed Faraj Hatu Revocable Trust dated September 11, 2015 (the "Revocable Trust"); the sixth cause of action based on lack of standing/real party in interest; and the seventh cause of action alleging that pre-judgment attachment order does not attach to property held as tenants by the entirety at the time the Debtor's underlying bankruptcy case was filed.[2] Southco opposes all such relief.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151 and 1334, and it is authorized to hear the matters raised under the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina. The matters raised and pending in the adversary proceeding make it a core proceeding pursuant to 28 U.S.C. § 157(b). The court has statutory and constitutional authority to enter this order pursuant to *Wellness Int'l Network, Ltd., v Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1947 (2015). Further, the

---

[1] Citations to the underlying bankruptcy case will be cited as "Dkt. #" while citations to the record in this adversary proceeding will be cited as "AP Dkt. #."

[2] The Trustee does not seek relief or judgment at this stage of the case under the First, Second, and Third Claims for Relief contained in the Amended Complaint.

parties have consented to the court entering final judgment on all core and non-core claims and defenses. (*Pretrial Scheduling Order*, AP Dkt. 40.)

## PROCEDURAL BACKGROUND

Amjed Faraj Hatu (the "Debtor" or "Mr. Hatu") filed a chapter 11 petition (Dkt. 1) in the underlying bankruptcy case on November 25, 2019 (the "Petition Date"). On March 5, 2021, he filed the original complaint in this adversary proceeding (AP Dkt. 1), which at its core seeks to relegate Southco's assertion of secured status against the real property assets in the case from secured to unsecured status. Prepetition, Southco had obtained state law prejudgment attachment orders from an Assistant Clerk of Superior Court of Wake County, North Carolina, in *Southco Distributing Co. v. H and H Distributors, et al*, NO. 18-CVS-4253 (N.C. Sup. Ct. 2018) (the "H&H Lawsuit").[3] The subject real properties are located in Pitt, Martin, and Nash Counties, North Carolina, and variously are held of record by the Debtor individually, as a tenant in common, in tenancy by the entirety with his spouse, or through the Revocable Trust.

Prior to an answer or other responsive pleading being filed, on May 5, 2020 the underlying chapter 11 bankruptcy case was converted to a chapter 7 case (Dkt. 250). Mr. Angell was appointed as the chapter 7 trustee (Dkt. 253), and he filed a motion to intervene in this adversary proceeding on May 11, 2021 (AP Dkt. 9). The request to intervene was granted (AP Dkt. 11). Southco filed a motion to dismiss under Rule 12(b)(6) (AP Dkt. 12). The Trustee and Mr. Hatu, who remained a plaintiff in the adversary proceeding for the limited purpose of protecting reserved exemptions from judgment in the properties, each responded in opposition to the motion to dismiss (AP Dkts.

---

[3] *See* 18-0099-JNC, Ex D., Dkt. 1-1 at 149-152, Orders of Attachment as to Debtor, the Revocable Trust, and Etaf Rum Hatu issued on April 19, 2018. Southco and Trustee further contend that the attachment orders appear in other forms and counties. *See* AP Dkt. 23, Exs. M, N, O, P, Q, and R at AP Dkt. 45, Ex BB. While the court may take judicial notice of public records, the parties have made this process more onerous than necessary by failing to present complete, clear, and certified copies of the records at issue in a manner in which the court can rely on the authenticity and completeness of some of the documents presented.

Case 21-00023-5-JNC    Doc 60    Filed 05/05/22    Entered 05/05/22 13:58:52    Page 4 of 24

16, 17). Following a hearing, the court entered an order (AP Dkt. 20) granting in part and denying in part the motion to dismiss but staying the effect as it also granted the Trustee's oral motion for leave to amend.

The Trustee timely filed the Amended Complaint (AP Dkt. 23), which Mr. Hatu supplemented for the limited purpose of preserving his exemption claims (AP Dkt. 32). In the Amended Complaint, the following causes of action are asserted against Southco:

First, an objection under 11 U.S.C. § 502(b) to Southco's proof of claim (POC #9) appearing in the case claims register;

Second, avoidance of Southco's state court attachment liens as constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B);

Third, avoidance of the state court attachment liens as constructively fraudulent transfers under state law (N.C. Gen. Stat. §39-23.1 *et seq*), made applicable hereto by operation of 11 U.S.C.§544(b)(1);

Fourth, avoidance of Southco's purported prejudgment attachment liens against the real property located in Nash County, North Carolina, due to alleged failures to comply strictly with the requirements of the North Carolina General Statutes for attachment levy and recordation;

Fifth, objection to the validity of the state court attachment liens because they have not been and cannot be reduced to final judgment;

Sixth, lack of standing to assert prejudgment, nonfinal lien claims against real property held by, or avoid prepetition transfers to, the Revocable Trust; and

Seventh, the attachment liens did not adhere to real property then held by Mr. Hatu and his now former spouse Etaf Rum Hatu as tenants by the entirety, and the automatic stay of 11 U.S.C.

§ 362(a) preventing the liens from subsequently attaching upon a divorce being granted to them postpetition.

Southco answered the Amended Complaint denying liability and asserting counterclaims against the bankruptcy estate and Mr. Hatu (AP Dkt. 33 and 34). A response to the counterclaims was filed (AP Dkt. 35) by the Trustee, followed by the Motion. Argument on the Motion was heard on March 22, 2022 with the court sitting in Greenville, North Carolina. Afterwards, with the permission of the court, Southco supplemented the record (AP Dkt. 54), and the Trustee responded objecting to the supplement (AP Dkt. 55). A subsequent hearing was conducted on April 27, 2022 in Raleigh, North Carolina, regarding the supplemental documents and Southco's separate motion in the Chapter 7 case seeking relief from the automatic stay (Dkt. 430). The Trustee and Hatu objected to the stay relief request (Dkt. 436, 438). Because of the overlap of issues and information, a ruling on the relief from stay motion was required for case consistency. Relief from stay has now been denied by separate order, leaving the Motion ripe for concurrent decision.

## STATEMENT OF THE FACTS

At this stage, the court must view the pleadings in the light most favorable to the non-moving party, here Southco. From the pleadings, the exhibits attached thereto where not contested, and the stipulations of counsel made in open court, the facts for the limited and nonbinding purposes of determination of the Motion are deemed as follows:

1. Debtor was a general partner in H&H Distributors ("H&H"), a North Carolina partnership. The exact date of the end of his participation in H&H, his termination as a general partner, and the partnership's dissolution, are disputed by the parties.

2. On or about September 11, 2015, the Debtor established the Revocable Trust. (AP Dkt. 23, ¶ 9.) From the face of the instrument, he is its only beneficiary.

3. On September 11, 2015 the Debtor and his wife Etaf Rum Hatu deeded Debtor's undivided one-half interest in properties located at 1126 W. Raleigh Boulevard, 1142 W. Raleigh Boulevard, and 1134 W. Raleigh Boulevard all in Rocky Mount, Nash County, North Carolina (together, the "West Raleigh Boulevard Properties") to the Revocable Trust without consideration being paid for the real property title transfers. (AP Dkt. 23, Ex. D.)

4. On September 11, 2015, the Debtor and his spouse Etaf Rum Hatu deeded Mr. Hatu's fee simple interest in properties located at 125 E. Washington Street and 213 E. Washington Street, Bethel, Pitt County, North Carolina, (together, the "Pitt County Properties") to the Revocable Trust without consideration being paid for the real property title transfers. (AP Dkt. 23, Ex. C.)

5. H&H had a working relationship with Southco, whereby H&H would purchase inventory (including cigarettes) from Southco that would be resold by H&H. (AP Dkt. 23, ¶ 12.)

6. On or about October 23, 2017, the Debtor, Shareef Hasan, and Afrah Hasan executed a formal Assignment of Partnership Interest of H&H Distributors. (AP Dkt. 23, Ex. B.) In this document, the Debtor assigned his entire partnership interest in H&H to Afrah Hasan, who is Shareef Hasan's wife.

7. On the Petition Date, the Revocable Trust held the fee simple interest in the Pitt County Properties. (AP Dkt. 23, Ex. C, being a deed dated September 11, 2015 signed by the Debtor and his spouse to convey the Pitt County Properties to the Revocable Trust.)

8. On the Petition Date, the Revocable Trust held a one-half undivided tenant in common interest in the West Raleigh Boulevard Properties. (AP Dkt. 23, Ex. D, being a deed dated September 11, 2015 signed by Debtor and his spouse to convey a one-half interest in the West Raleigh Boulevard Properties to the Revocable Trust.)

9. On the Petition date, Debtor owned the fee simple interest in property located at 109 Pheasant Court, Rocky Mount, Nash County, North Carolina ("109 Pheasant Court") (Dkt. 23, ¶ 32).

10. On the Petition Date, the Debtor and his wife, Etaf Rum Hatu, owned as tenants by the entirety, property located at 813 Logan Trail, Rocky Mount, Nash County, North Carolina ("813 Logan Trail"). (AP Dkt. 23, Ex. E, Deed of 813 Logan Trail to Debtor and wife on July 17, 2013.)

11. On the Petition Date, the Debtor owned a 100% fee simple interest in property located at 1009-1011 N. Haughton Street, Williamston, Martin County, North Carolina ("1009-1011 N. Haughton Street").

12. On the Petition Date, the Debtor and his wife, Etaf Rum Hatu, owned as tenants by the entirety, property located at in 610-608 N. Haughton Street, Williamston, Martin County, North Carolina ("610-608 N. Haughton Street"). (AP Dkt. 23, Ex. B.)

13. Debtor and Etaf Rum Hatu entered into a separation agreement dated June 28, 2017 (AP Dkt. 23, Ex. B, Notarized Separation and Property Settlement Agreement.)

14. On November 26, 2019, being the day after the Petition Date, Debtor and Mrs. Hatu were granted an absolute divorce in state court. (AP Dkt. 23, Ex. H, Divorce Judgment).

15. On April 4, 2018, Southco filed its complaint (the "H&H Complaint") in the H&H Lawsuit in Wake County Superior Court (Case No. 18 CVS 4253) against H&H, the Debtor as a former partner of H&H, Mrs. Hatu, Mr. and Mrs. Hasan as the current partners of H&H, and several other defendants. (AP Dkt. 23, Ex. L, "H&H Complaint"). The factual allegations contained in the H&H Complaint were verified by Mr. Christopher C. Wise, an officer of Southco. (AP 18-0099, Dkt. 1-1 at 32, Corporate Verification.)

16. On August 30, 2018, the H&H Lawsuit was removed from Wake County Superior Court to this court in the related chapter 11 case of *In re Shareef N. Hasan and Afrah Hasan*, Case No. 18-3785-5-JNC, and assigned adversary proceeding number 18-0099-5-JNC.

17. On June 28, 2019, Southco amended the H&H Complaint in Adv. Pro. 18-0099-5-JNC to allege the following claims against the Debtor and the Revocable Trust:

    a. Count Two: individual liability of the Debtor as a general partner of H&H for H&H's for a money judgment from a breach of contract (nonpayment of an open account for goods sold by Southco;

    b. Count Ten: Declaratory judgment that the Revocable Trust is a sham trust that must be set aside;

    c. Count Twelve: Unfair and Deceptive Trade Practices;

    d. Count Thirteen: Permanent Injunction; and

    e. Count Fourteen: Self-dealing with H&H.

18. On April 10, 2018, Southco filed an ancillary state court attachment proceeding in the H&H Lawsuit supported by two affidavits signed by Mr. Wise, seeking the issuance of various orders of attachment against all real property of the Debtor and the Revocable Trust (AP Dkt. 23, Ex. J and Ex. K, the "Affidavits").

19. As the basis for attachment, the Affidavits provide: "The defendant is a person who, with intent to defraud his/her creditors, or to avoid service of summons has departed, or is about to depart the state." They further state: "The defendant is a person or domestic corporation which, with intent to defraud his/her or its creditors has removed or is about to remove, property from this state." (Ex. J and K, AP Dkt. 23). Southco also references the H&H Complaint for support of the allegation of intent to defraud.

8

20. On April 19, 2018, the Assistant Clerk of Superior Court of Wake County entered separate orders of attachment with respect to the Debtor, the Revocable Trust, and Etaf Rum Hatu, issued for service and levy by the Sheriff in Nash County. *See* H&H Lawsuit, AP 18-0099-5-JNC, Ex D., Dkt. 1-1 at 149-152, Orders of Attachment as to Debtor, the Revocable Trust, and Etaf Rum Hatu issued April 19, 2018.

21. On May 30, 2018, the Assistant Clerk of Superior Court of Wake County entered separate orders of attachment with respect to the Debtor, the Revocable Trust, and Etaf Rum Hatu, issued for service and levy by the Sheriffs in Martin County and Pitt County respectively. Also on that date, as admitted by the parties, alias and pluries orders of attachment were reportedly entered by the Wake County Clerk of Court as to the Revocable Trust and Etaf Rum Hatu to the Sheriff in Nash County, but unchallenged copies of those documents have not been properly presented to the court by either party for consideration in this matter. (*See* Amended Complaint, AP Dkt. 23 ¶ 67; Answer to Amended Complaint, AP Dkt. 33, at, ¶ 67).

22. While the H&H Lawsuit was pending before this court, it entered an order granting Etaf Rum Hatu's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to that proceeding by Federal Rule of Bankruptcy Procedure 7012, dismissing all claims brought by Southco in the amended complaint brought against her. (AP 18-0099-5-JNC, Dkt. 117). Southco did not appeal or seek a re-hearing on that ruling, nor has it otherwise filed further claims with respect to Mrs. Hatu in state or federal court.

23. On May 29, 2020 (the "Remand Date"), the H&H Lawsuit returned to the Wake County Superior Court when the underlying chapter 11 case of Mr. and Mrs. Hasan was dismissed. (AP 18-0099-5-JNC, Dkt. 166.) The Remand Date is after the Petition Date.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is decided under the same standard as Rule 12(b)(6) motions. *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). If sought by the plaintiff, the court should "consider the answer as well as the complaint." *Bradley v. Ramsey*, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004), *quoting Continental Cleaning Serv. v. United Parcel Serv., Inc.,* 1999 WL 1939249, *1 (M.D.N.C.1999) (*quoting Menominee Indian Tribe v. Thompson,* 943 F.Supp. 999, 1005 (W.D.Wis.1996)). The court may rely on facts admitted in the pleadings, uncontested documents attached to it, and matters subject to judicial notice. *Id.; Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

As for documents attached to pleadings, if sufficiently incorporated therein and if not contested by the non-moving party, courts may include such documents in its consideration of the Rule 12(c) motion. *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606-607 (4th Cir. 2015). A document is effectively incorporated into a pleading where it is "integral to and explicitly relied on" and no question of authenticity is raised by the opponent. *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Judgment on the pleadings under Rule 12(c) is warranted only if the undisputed or undisputable facts demonstrate that the moving party is entitled to judgment as a matter of law. *Bradley*, 329 F.Supp.2d at 622; 2 Moore's Federal Practice - Civil § 12.38 (2021).

## DISCUSSION

### I.     Seventh Cause of Action

In the seventh cause of action, the Trustee submits that as a matter of law the pre-judgment attachment order could not attach to and successfully lien real property held as tenants by the

10

entirety at all times from entry of the attachment order in state court through the moment of the filing of the petition in the bankruptcy court. Southco admits that properties located at 813 Logan Trial and 610-608 N. Haughton Street (the" TBE Properties") were held of record by the Debtor and Etaf Rum Hatu as tenants by the entirety on the Petition Date (Answer, AP Dkt 33, ¶¶ 34, 39.) On November 26, 2019, the day after Debtor filed the petition in this case, the Debtor and Etaf Rum Hatu (who has not filed bankruptcy) were granted an absolute divorce. (AP Dkt. 23, Ex. H.)

Under applicable North Carolina law, upon divorce, tenancy by entirety real estate automatically converts to tenancy in common, with each former spouse holding a one-half interest.[4]

As this court has explained:

> In North Carolina, a tenancy by the entirety "is an estate where the husband and wife are neither 'joint tenants' nor 'tenants in common,' since they are considered one person in law." *L & M Gas Co. v. Leggett*, 273 N.C. 547, 550, 161 S.E.2d 23, 26 (1968). "[A] judgment that is against one spouse does not attach to property held by both spouses as tenants by the entirety until the property is converted to another form of estate." *In re Ulmer*, 211 B.R. 523, 525 (Bankr. E.D.N.C. 1997) (citing *Union Grove Milling and Manufacturing Co. v. Faw*, 103 N.C. App. 166, 404 S.E.2d 508 (1991)). *See also In re Foreclosure of Deed of Trust Recorded in Book 911, Page 512, Catawba Cty. Registry*, 303 N.C. 514, 519, 279 S.E.2d 566, 569 (1981) (holding that a judgment effective against only one spouse does not attach to real property held by husband and wife in a tenancy by the entirety). Applying this state law to 11 U.S.C. § 522(f), the court agrees with the United States Bankruptcy Court for the Middle District of North Carolina that a judgment against only one spouse does not constitute a judicial lien against property owned as a tenancy by the entirety at the time of a bankruptcy petition. *In re Glover*, Case No. 08-10505C-7G, 2010 Bankr. LEXIS 3165 (Bankr. M.D.N.C. Sept. 14, 2010).

*In re Grimes*, No. 15-06465-5-DMW, 2016 Bankr. LEXIS 2247, at *4-5 (Bankr. E.D.N.C. June 9, 2016).

Property owned as tenants by the entirety is not subject to levy under execution on a judgment rendered against the husband or the wife alone.  Creditors cannot reach entirety property

---

[4] N. C. Gen. Stat. § 41-63(5) states, "An absolute divorce converts property held as tenants by the entirety to a tenancy in common."

upon a judgment procured against one spouse alone. *Grabenhofer v. Garrett*, 260 N.C. 118, 120, 131 S.E.2d 675, 677 (1963). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979).

At the instant of the commencement of a bankruptcy case, an automatic stay comes into effect as a matter of law. 11 U.S.C. § 362(a). Before the petition was filed, Southco's attachment levy could not reach the TBE Properties because both were held in tenancy by the entirety, and it did not hold a viable claim against Mrs. Hatu. *See* AP 18-0099-5-JNC, Dkt. 117. When the divorce was granted, per North Carolina law at that moment the property interests converted to tenancy in common. However, because the divorce was granted and the conversion occurred postpetition, the intervening imposition of the automatic stay blocked Southco's attachment levy from becoming a valid lien against Mr. Hatu's resultant half interest in these two properties.

In opposition, Southco cites *In re Cordova*, 73 F.3d 38 (4th Cir. 1996) for the proposition that property previously held in tenancy by the entirety is subject to a prior lien upon a debtor's post-petition divorce granted within 180 days after the filing of the petition. Southco fails to point out, however, that the *Cordova* court only held that the entry of an order of divorce within 180 days of filing of the petition renders a single filing debtor's claim of *exemption* as tenancy by the entirety under 11 U.S.C. § 522(b)(2)(B) inapplicable because of 11 U.S.C. § 541(a)(5)(B). The latter statute expands the definition of "property of the estate" to include "[a]ny interest in property that would have been property of the estate. . . if the Debtor acquires . . . within 180 days after such date – (B) as a result of a . . . final divorce decree. . . ." Under 11 U.S.C. § 541(a)(1), the bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the

commencement of the case." This broad definition includes a debtor's interest in entireties property on the case's petition date. *Fairfield v. United States (In re Ballard),* 65 F.3d 367, 371 (4th Cir.1995). If no joint creditors are presented, that interest may then be deemed exempt under 11 U.S.C. § 522(b)(2)(B). The restrictions on alienation accompanying tenancy by the entirety burdens not only a debtor, but non-joint creditors as well. However, to the extent joint creditors do exist, or if because of a divorce within the 180-day period the form of holding converts to tenancy in common, the contingent exemption rights under § 522(b)(2)(B) are rendered inapplicable. The estate immediately then succeeds to a debtor's now tenant in common interest.

Because Southco never held a valid claim against Mrs. Hatu, its prejudgment levy attempt on property held in tenancy by the entirety failed. Because the entirety extinguishment occurred after the petition was filed, the Debtor's property interest becomes available to satisfy the claims of creditors in bankruptcy without prior liens adhering. *In re Cordova*, 73 F.3d at 40-41; *In re Ballard*, 65 F.3d at 371-372. The Debtor's one half-interest immediately became property of the bankruptcy estate as defined in 11 U.S.C. § 541(a)(1). It makes no difference whether the divorce date is on the first or last day of the 180 day after petition period.

Southco next argues that when the Debtor's general discharge was waived, under 11 U.S.C. § 362(c)(2) the automatic stay terminated, and its lien then attached anew. That supposition is accurate as to Mr. Hatu individually, but the Trustee correctly points out that under 11 U.S.C. § 362(c)(1), the automatic stay continues in effect as to property of the estate. 11 U.S.C. § 362(c)(1) ("The stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate[.]") Mrs. Hatu is no longer a defendant in the H&H Lawsuit or in any other pending case brought by Southco. It holds a claim against her former husband the Debtor, but not her.

Finding under unchallenged facts and by operation of state law the pre-judgment attachment could not and never did properly attach to real property held in tenancy by the entirety, the Trustee's motion for judgment on the pleadings is GRANTED as to Claim Seven regarding the TBE Properties (813 Logan Trail and 610-608 N. Haughton Street) and the net sale proceeds thereof now held by the Trustee.

## II.    Fourth Cause of Action

Regarding the Fourth Cause of Action, that claim is limited to 813 Logan Trail and 109 Pheasant Court.[5]  The Trustee contends that, as a party with the rights of a bona fide purchaser under 11 U.S.C. § 544(a)(3),[6] the liens alleged by Southco as to 813 Logan Trail[7] and 109 Pheasant Court did not properly attach pursuant to North Carolina General Statute § 1-440.33(b). Under North Carolina law, a lien attaches at the time of the docketing of a certificate of levy in the county where the land is located, and, if a valid lis pendens has also been filed, the lien relates back to the date of the filing thereof.  N.C. Gen. Stat. § 1-440.33(b).

As to the process of levying on real property, N.C. Gen. Stat. § 1-440.17 provides:

(a)    In order to make a levy on real property, *the sheriff* need not go upon the land or take control over it, but he

(1)    *Shall make an endorsement upon the order* of attachment or shall attach thereto a statement showing that he thereby levies upon the defendant's

---

[5] The Nash County Registry reflects that 813 Logan Trail was the marital home of Mr. Hatu and his wife, owned jointly by them as a tenancy in the entirety, and that title to 109 Pheasant Court was held in Mr. Hatu's name only. Claim four also includes the West Raleigh Boulevard Properties, which the Revocable Trust allegedly owned a 50% tenant in common interest in as of the petition date. However, at the hearing on the judgment on the pleadings, the Trustee indicated that he was not seeking judgment on the pleadings as to the W. Raleigh Boulevard properties under Claim four.

[6] "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide  purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(3).

[7] Regarding 813 Logan Trail, judgment for the Trustee has been granted in the analysis of Claim 7 above. Consequently, relief as to that property is not necessary in this Claim 4 analysis but is included anyway for the sake of clarity.

14

interest in the real property described in such endorsement or statement, describing the real property in sufficient detail to identify it clearly, and

(2)  **Shall,** as promptly as practicable, **certify such levy**, and the names of the parties to the action, **to the clerk of the superior court of the county in which the land lies**.

(b)  Upon receipt of the sheriff's certificate, the clerk shall docket the levy, as provided by G.S. 1-440.33.

N.C. Gen. Stat. § 1-440.17.

Additionally, N.C. Gen. Stat. § 1-440.33(b) provides:

*(c)*      *When the clerk receives from the sheriff a certificate of levy on real property as provided by G.S. 1-440.17, the clerk shall promptly note the levy on his judgment docket and index the same. When the levy is thus docketed and indexed,*

(1)  **The lien attaches** and relates back to the time of the filing of the notice of lis pendens if the plaintiff has prior to the levy caused notice of the issuance of the order of attachment to be properly entered on the lis pendens docket of the county in which the land lies, as provided by subsection (a) of this section.

(2)  **The lien attaches only from the time of the docketing of the certificate of levy** if no entry of the issuance of the order of attachment has been made prior to the levy on the lis pendens docket of the county in which the land lies.

N.C. Gen. Stat. § 1-440.33(b) (emphasis added).

For an attachment levy to be effective, it must be docketed by the clerk of court in the county where the real property is situated to be valid under the North Carolina attachment statutes quoted above.  *Puls v. Suntrust Mortg., Inc.*, No. 5:08-CV-369-F, 2010 U.S. Dist. LEXIS 150888, at *23 (E.D.N.C. Aug. 20, 2010) ( "It follows from the plain language of the statute that if the levy is *not* docketed by a clerk of court, then a lien enforceable as to third parties *does not attach*.") Strict compliance with the statute is required. *Id.*

The Trustee argues that as of the Petition Date the public record reflects, and the court may take judicial notice, no certificates of levy were properly docketed in files on the judgment index

15

in Nash County, North Carolina, as to 813 Logan Trail or 109 Pheasant Court. Additionally, he maintains that no Notices of Lis Pendens appear in the Lis Pendens Index of Nash County, North Carolina, with respect to 813 Logan Trial or 109 Pheasant Court. He contends any lien rights asserted by Southco in the Nash County Properties are voidable as a hypothetical bona fide purchaser, deemed effective as a matter of law at the commencement of the bankruptcy case.

Southco responds that the public record from Nash County is unclear because copies of the deeds for the subject properties were attached to the official state law attachment order form AOC-CV-301 (AP Dkt. 48 at 40-46) rather than listed specifically on its back or second page, thereby subjecting the public lien record in Nash County to differing possible *factual* (in lieu of only legal title) interpretations. Southco maintains  it is entitled to conduct discovery and present evidence on the matter, thereby taking the issue out of Rule 12 consideration.

In its answer, Southco maintains that entries in the Nash County Judgment and Lis Pendens Index speak for themselves and are the best evidence of its content. The Trustee counters that the document controls response is an admission of noncompliance with the North Carolina prejudgment attachment statutes, which are subject to strict scrutiny. Southco replies that the public record documents submitted by the Trustee were not full and complete, and it supplemented the record (AP Dkt. 54; the "Supplemental Documents") two days later. The Trustee contends the Supplemental Documents are from the Wake County records, not Nash County and therefore are immaterial (AP Dkt. 54).

At the second hearing on April 27, 2022, counsel for Southco could not inform the court with certainty in what county the Supplemental Documents were obtained or if they appear in the Judgment Index of any county.  The court directed the parties to determine whether the documents are recorded in Wake County, Nash County, or neither.  Therefore, on the record as it currently

stands, the court is unable to ascertain with certainty whether there exists a proper levy as to 813 Logan Trail and 109 Pheasant Court. The public record, and its effect on levy, is therefore disputed.

While this determination must be made from the public record, without a stipulation from the parties, the court cannot find on the faces of the competing documents alone (as currently presented) whether a proper levy has occurred.[8] It makes no difference in the end as to 813 Logan Trail based on the Seventh Claim decision, but 109 Pheasant Court remains in play. Therefore, at this stage of the litigation, the court cannot find for the trustee as a matter of law, and judgment on the pleadings is DENIED as to the Fourth Cause of Action.

### III.    Sixth Cause of Action

In his sixth enumerated claim, the Trustee asserts Southco lacks standing to litigate its claim pending in state court in the H&H Lawsuit that the Revocable Trust is a "sham trust."  The subject properties held in the name of the Revocable Trust when Southco filed the H&H Lawsuit and on the Petition Date were the W. Raleigh Road Properties and the Pitt County Properties.

Because the Revocable Trust, whether it survives the sham assertion or not, is a bankruptcy estate asset, against which no other party may move by operation of the automatic stay, the Trustee asserts that he holds exclusive standing to seek relief determining if it is a sham formed and established prepetition for the purpose of defrauding creditors of the Debtor/Defendant Amjed Hatu.[9]  He further asserts that by operation of 11 U.S.C. § 541(a) (determining what is property of

---

[8] It is most unfortunate and disappointing that experienced counsel were unable to agree on the simple state of the public record. These issues should be easily determined on a clear record, but counsel have been unable to agree on what is in the public record or to provide fully certified copies of the public record at issue so that the court may take proper judicial notice of that record.

[9] Southco also alleged in pleadings filed in this court that the Revocable Trust is a mere sham in Adversary Proceeding No. 18-00099-5-JNC, removed from, but then remanded back to the Wake County, North Carolina Superior Court by order remanding of May 29, 2020 (Dkt. 166). However, that action is stayed in all respects as to the properties here and as to the Revocable Trust by the automatic stay of 11 U.S.C. § 362(a).

the estate), § 544(b)[10] (state law voidable transfer law), §548(a) (federal bankruptcy fraudulent transfer law), § 548(e)(1)[11] (the right to challenge the independence of self-settled trusts) and any other claims existing under or related to chapter 5 of the Bankruptcy Code, only a trustee has standing to bring avoidance actions to recover assets transferred prepetition, without consideration, fraudulently, or otherwise avoidable at law.

As of the petition filing, creditors lack or lose standing to bring "causes of action [that] are . . . similar in object and purpose to claims that the trustee could bring in bankruptcy*." Nat'l Am. Ins. Co. v. Ruppert Landscaping Co*., 187 F.3d 439, 441 (4th Cir. 1999); *see* 11 U.S.C. § 541(a)(1). "Once a bankruptcy case is filed, all fraudulent transfer claims relating to a transfer made by the debtor, and the rights to recover damages or to avoid liens in connection with such claims, are property of the estate." *In re Midsouth Golf, LLC. (Fairfield Harbour Property Owners Association, Inc. v. Midsouth Golf, LLC et al*.) AP No: 14–00012–8–RDD at 3 (Bankr. E.D.N.C. Nov. 20, 2014) (*quoting In re Ontos, Inc. (Morley v. Ontos, Inc., et al*), 478 F.3d 427, 431–32 (1st Cir.2007)). Applicable in the Fourth Circuit, the legal principle that a sole creditor lacks standing is aptly summarized by the U.S. District Court for the Middle District of North Carolina:

> Section 548 of the Bankruptcy Code authorizes a trustee to avoid fraudulent transfers of a debtor's property. 11 U.S.C. § 548(a)(1)(A). Generally speaking, after

---

[10] Pertinent to the Motion, the potential primary state law claims are general common law fraud (which is also contained or subsumed into 11 U.S.C. § 548(a)(1)(A) and the Uniform Voidable Transfers Act ("UVTA") made effective in North Carolina at North Carolina General Statutes §§ 39-1 et seq.

[11] "In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if --

|  |  |
|---|---|
| (A) | such transfer was made to a self-settled trust or similar device; |
| (B) | such transfer was by the debtor; |
| (C) | the debtor is a beneficiary of such trust or similar device; and |
| (D) | the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted." |

11 U.S.C.§ 548(e)(1)

the filing of a bankruptcy petition a creditor lacks standing under section 548 to bring a cause of action for the avoidance of fraudulent transfers. "If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Ruppert*, 187 F.3d at 441; *accord Poth v. Russey*, 99 F. App'x 446, 457 (4th Cir. 2004) (per curiam); *see Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988). Creditors "lack standing to bring 'causes of action [that] are . . . similar in object and purpose to claims that the trustee could bring in bankruptcy,' regardless of whether such claims are technically part of the estate of the bankrupt." *Poth*, 99 F. App'x at 457 (*quoting Ruppert*, 187 F.3d at 441). "When a creditor brings a state-law challenge to a transaction that a bankruptcy trustee could avoid as a fraudulent conveyance, the state-law cause of action is 'so similar in object and purpose' to the fraudulent conveyance claim that the creditor lacks standing to assert it." Id. The trustee therefore retains sole standing to bring a cause of action, unless he abandons the claim. *Ruppert*, 187 F.3d at 441.

*Ivester v. Miller*, 398 B.R. 408, 430 (M.D.N.C. 2008).

The Trustee is therefore correct that as a matter of law upon the filing of the bankruptcy petition, Southco lost standing to litigate the sham trust claim. The claim now exclusively belongs to the bankruptcy estate alone under federal law, which trumps state law to the contrary. Southco argues this position falls short at the Rule 12 motion stage for two reasons. First, it contends its claims are individualized and not similar in object and purpose to those alleged by the Trustee, claiming its injuries arise not from the transfer of real property from Debtor to the Revocable Trust without consideration, but rather from Mr. Hatu's alleged scheme to defraud it alone and shelter assets. This argument fails because the court has previously found in the order approving compromise in Debtor's underlying bankruptcy case that the chapter 5 cause of action from the Debtor's use of the "sham trust" as a vehicle of fraud to protect and receive assets without consideration is virtually the same in object, scope, assets targeted, and purpose as the specific claims for relief asserted by Southco in its H&H Lawsuit as to the Revocable Trust. (Order Approving Compromise, Dkt. 437). All creditors, not just Southco, are harmed by the prepetition transfer of valuable assets without receipt of consideration.

Second, Southco once more contends that the Debtor's prior waiver of his general discharge and the Trustee's Motion to Approve Compromise in the underlying bankruptcy case (Dkt. 401) constitute an abandonment of such claims, which then allows Southco to pursue them again. As to that argument, as noted in the Seventh Claim analysis above, the Trustee correctly points out that under 11 U.S.C. § 362(c)(1), the automatic stay continues as to property of the estate even if it lifts with respect to the Debtor. 11 U.S.C. § 362(c)(1) ("the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate[.]") Following this waiver of discharge, Southco is free to pursue a money judgment against Mr. Hatu in state or federal court, but by operation of the automatic stay, Southco cannot pursue or assert new liens against property of the bankruptcy estate without a further order terminating the stay as to the estate. It has obtained no such order.

As to the abandonment of claim, Southco argues that the Motion to Compromise offers little to no benefit to unsecured creditors of the Debtor's estate beyond distribution of the proceeds of the sale of the properties in question. This argument is problematic first because no motion to abandon has been filed by the Trustee under 11 U.S.C. § 554(a), nor has one been filed by Southco seeking to force the Trustee to abandon these assets under 11 U.S.C. § 554(b). Second, the Trustee's Motion to Approve Compromise (Dkt. 401), approved by the court's order of April 4, 2022 (Dkt. 437), obtains the same relief Southco sought in the H&H Lawsuit—to make the assets of the Revocable Trust part of the estate and available to satisfy creditors' claims in their relative order of priority. Because the Motion to Compromise has now been approved in the underlying bankruptcy case, this argument made by Southco is moot.

As a matter of law, Southco has no standing to pursue or benefit from claims that the Revocable Trust is a sham trust, for fraud, or any Bankruptcy Code chapter 5 claims, all of which

belong exclusively to the Trustee. Therefore, the Trustee's motion is GRANTED as to the Sixth Cause of Action.

However, unlike the TBE Properties, the grant of the Rule 12(c) motion as to the Sixth Cause of Action does not entirely clear and remove the Revocable Trust properties from the attachment liens. As the Trustee did not prevail on his motion for judgment on the pleadings as to the Fourth and Fifth Causes of Action, the Revocable Trust properties remain potentially subject to attachment liens under the universe of the set of facts reasonably conceivable from the four corners of the respective pleadings. Southco is entitled to conduct discovery and present a defense on these issues, consistent with the standing limitations imposed in this ruling on the Sixth Cause of Action.

## IV.    Fifth Cause of Action

The Trustee's fifth claim is an objection to the validity of Southco's prejudgment lien asserted against the properties held by the Debtor and the Revocable Trust based on the lack of entry of a final judgment prior to the Petition Date, and inability to obtain one afterwards due to the intervention of the automatic stay. The Trustee contends that without a final judgment in state court, Southco does not hold a valid final lien superior to the Trustee's § 544(a) and (b) rights. Southco, on the other hand, contends that because the action has not been allowed to proceed to judgment due to the automatic stay, the status quo is maintained, and the trustee takes subject to it until such lien is set aside.

Other courts have faced this dilemma. In *In re VR King Constr., LLC,* No. 18-31635, 2020 WL 7063192, (Bankr. W.D.N.C. Dec. 2, 2020), the court noted:

> While federal law provides the trustee with "strong-arm" powers pursuant to 11 U.S.C. § 544, state law governs the trustee's use of those powers. *Crestar Bank v. Neal (In re Kitchin Equip. Co.)*, 960 F.2d 1242, 1245 (4th Cir. 1992) (citing *Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir. 1985))[. . . . ]Section 544(a)(3) places the

> trustee in the position of a bona fide purchaser, and, "[a]s such, the trustee may avoid a claim against the debtor's estate if a bona fide purchaser would have defeated the claim." *Butler v. Deutsche Bank Tr. Co. Ams. (In re Rose)*, Ch. 7 Case No. 08-00625-8, Adv. No. 08-00080-8, 2009 WL 2226658, at *2 (Bankr. E.D.N.C. July 20, 2009) (citing § 544(a)(3)).

*Id.* at *10.

Both parties cite *Ivester v. Miller* in support of their respective positions. The district court

analyzed the law of pre-judgment attachment in North Carolina, finding:

> Based on the North Carolina attachment lien statute and relevant case law, the court concludes that the Ivesters "perfected" their attachment lien in the real property on October 21, 2005, the date of levy and recordation of their lis pendens, almost a year before the petition date. This staked their place in line ahead of other creditors, including the Trustee, but subject to an important condition: entry of a final judgment in the state court action. Under North Carolina attachment law and in contrast to judgment liens and other secured liens, at the very moment of the petition the Ivesters' lien remained inchoate, fully dependent upon the resolution of the underlying state court action. N.C. Gen. Stat. §§ 1–440.1, 1–440.46. Notwithstanding this contingency, the Trustee, who takes a debtor's real property with the rights of a bona fide purchaser, was subject to the attachment lien. The Ivesters' interest in the real property therefore remained superior to that of the Trustee as long as the Ivesters' state court action remained viable and until they proceed to judgment successfully. Whether and when the Ivesters should be permitted to proceed to judgment depends on other factors, including whether relief from stay is warranted, as discussed *infra.*

*Ivester*, 398 B.R. at 419–20.

Here, the Trustee is on notice from the lis pendens, pre-judgment attachment orders, and

the sheriff levies of Southco's lien claims against Hatu.  As a hypothetical bona fide purchaser, the

public record provides notice of the existence of those potential lien claims. "Under the North

Carolina statutory scheme for attachment liens, as long as the underlying principal action remains

viable the attachment lien survives in bankruptcy and must be valued, whether through litigation

or through the proof of claim process." *Ivester*, 398 B.R. at 427 n.19; *see also In re Faison*, 518

B.R. 849, 854 (Bankr. E.D.N.C. 2014) ("The significance of the lis pendens as to a bankruptcy

trustee is that although the trustee may obtain a lien as a hypothetical judicial lien creditor on the

petition date, his interest is subject to the outcome of the State Court Proceeding.")  If applicable and valid, a trustee would take property "subject to the outcome of the pending litigation as to title."  *In re Sea Horse Realty & Const., Inc.,* No. 11-07223-8-JRL, 2012 WL 3249548, at *3 (Bankr. E.D.N.C. Aug. 7, 2012).

Southco's interest is only superior to the Trustee's interest as long as its state court action remains viable.  *Ivester v. Miller*, 398 B.R. at 420; *In re VR King Constr.*, LLC, 2020 WL at *10. As noted above in the analysis of Claim Six, the court makes no finding on nonexclusive claims of Southco that may support a viable claim.  Whether Southco retains viable claims and any properly levied attachments is not an appropriate determination at this stage of the proceeding on the current record before the court at the Rule 12 motion stage.  Hypothetical questions abound and remain regarding the validity of the attachments in claim four, made more difficult because of the lack of clarity as to the public record as presented.[12]  Additionally, while Southco lost standing to bring fraud claims, Chapter 5 actions, and any other claims belonging exclusively to the Trustee upon the filing of the petition in this case, questions regarding whether any claims remain for Southco that could support an attachment lien persist for Rule 12 analysis purposes.  Whether Southco's surviving state court claims remain viable cannot be determined without consideration of other evidence.  Further, as noted above, even the exact status of the state court public record remains unsettled, which while unfortunate, also shows that Rule 12(c) is not the vehicle for determination of this issue.

---

[12] The attachment orders were issued by an assistant clerk of court as a ministerial function without an evidentiary hearing based solely on the Wise affidavits (see *supra*, ¶¶ 18, 19) asserting fraud and removal of property from the estate by the Debtor.  That ruling is not final and could be revisited *de novo* at any time whether in state court or by this court with respect to the debtor by a judge upon proper motion, even after property has been attached. *See* N.C. Gen. Stat. § 1-440.36 (dissolution of the order of attachment by motion before the clerk or the judge).

Accordingly, the Trustee's motion for judgment on the pleadings as to the Fifth Cause of Action is DENIED.

## CONCLUSION

For the foregoing reasons, Trustee's motion for judgment on the pleadings is:

(1) As to Claim Four, DENIED;

(2) As to Claim Five, DENIED;

(3) AS to Claim Six, GRANTED with Southco retaining its lien right defenses and assertions as to Revocable Trust assets under other causes of actions; and

(4) As to Claim Seven, GRANTED.

IT IS ORDERED THAT this adversary proceeding move forward with respect to the remaining causes of action (Claims, One, Two, Three. Four, and Five), concerning the status of the attachment liens and other matters at issue as to all identified real property assets (including net sale proceeds on hand) other than the TBE Properties (813 Logan Trail and 610-608 N. Haughton Street, and associated net sale proceeds). As a result of the ruling on the seventh claim, Southco has no surviving lien or secured claim as to the TBE Properties and identifiable net sale proceeds thereof.

IT IS FURTHER ORDERED that within ten (10) days of the entry of this order, counsel for the parties submit a joint revised and updated Rule 26 proposed discovery schedule for the court's consideration in issuing an amended scheduling order.

**END OF DOCUMENT**